IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LAMAR GURDINE,** | **:  CIVIL ACTION NO. 1:23-CV-262** |
| Plaintiff | :  (Judge Conner) |
| v. | : |
| **BERNADETTE MASON,** *et al.*, | : |
| Defendants | : |

### MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Lamar Gurdine, alleges that defendants are violating his civil rights by failing to provide a separate religious service for members of the Nation of Islam. Defendants have moved to dismiss. The motion will be granted in part and denied in part.

**I.      Factual Background & Procedural History**

Gurdine has been incarcerated in Mahanoy State Correctional Institution ("SCI-Mahanoy") at all relevant times. He filed his complaint on January 24, 2023 in the Schuylkill County Court of Common Pleas. (Doc. 1-1). Defendants removed the case to this district on February 13, 2023, pursuant to 28 U.S.C. § 1441. (Doc. 1).

According to the complaint, Gurdine, a member of the Nation of Islam, filed a request for separate Nation of Islam religious services in SCI-Mahanoy on September 9, 2019. (Doc. 1-1 ¶ 8). The request was approved on January 3, 2020 by Reverend Ulli Klemm, the Pennsylvania Department of Corrections' Bureau of Treatment Services designee. (Id. ¶ 9). Because no faith leader could be located to lead the Nation of Islam service, the prison arranged for sixty-minute video services

to begin in March 2020.  (Id. ¶ 10).  The start date was postponed, however, when the DOC implemented a statewide lockdown in March 2020 due to the COVID-19 pandemic.  (Id. ¶ 11).

On November 11, 2020, Gurdine sent a request for Nation of Islam services to begin; for him to be allowed to purchase Nation of Islam religious material; and for an outside faith leader in the Nation of Islam to be contacted to lead the religious services.  (Id. ¶ 12).  Defendant Scott, SCI-Mahanoy's chaplaincy program director, allegedly responded to the request on December 9, 2020 and stated that no visitors could enter the prison until COVID-19 restrictions were lifted, that the prison had previously contacted a local mosque to inquire about a religious leader who could lead Nation of Islam services but had received no response, and that Nation of Islam library material would be available in the prison library in the near future.  (Id. ¶¶ 6, 13).

The prison allegedly resumed religious services in October 2021 but did not begin conducting services for the Nation of Islam.  (Id. ¶ 14).  Gurdine requested that the prison begin conducting Nation of Islam services again on December 28, 2021.  (Id. ¶ 15).  Defendant MacKnight, the prison's corrections classification and programs director, allegedly denied the request, stating that the services could not begin until an outside faith leader could be found who could conduct the services.  (Id. ¶¶ 5, 16).  The complaint names as defendants Scott, MacKnight, and Mason, SCI-Mahanoy's superintendent.  (Id. ¶¶ 4-6).  The complaint alleges that defendants violated Gurdine's right to freedom of religion under the First Amendment, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the

Pennsylvania Constitution, and Pennsylvania's Religious Freedom Protection Act ("RFPA") and violated his right to equal protection under the Fourteenth Amendment. (Id. ¶¶ 18-21). Gurdine seeks damages and a permanent injunction requiring defendants to allow Nation of Islam religious services to commence in SCI-Mahanoy. (Id. ¶¶ 22-24).

Defendants moved to dismiss the complaint on March 15, 2023, arguing that dismissal is appropriate because the complaint fails to allege defendants' personal involvement and fails to state a claim upon which relief may be granted. (Docs. 5-6). Briefing on the motion is complete and it is ripe for review. (Docs. 6, 9).

## II.     Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

3

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants.  Sause v. Bauer, 585 U.S. __, 138 S. Ct. 2561, 2563 (2018).  *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### III. <u>Discussion</u>

Gurdine brings his constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284-85 (2002); <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." <u>Kneipp</u>, 95 F.3d at 1204 (quoting <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir. 1995)).

We will first consider defendants' argument that the complaint fails to allege the defendants' personal involvement. A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. <u>Jutrowski v. Twp. of Riverdale</u>, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. <u>Id.</u>

We find that the complaint adequately pleads the personal involvement of defendants Scott and MacKnight in the alleged violations of Gurdine's civil rights. The complaint alleges facts from which it could be inferred that Scott and MacKnight were responsible for policies at SCI-Mahanoy that determined whether religious services could be provided for a particular faith group, that they were

5

aware of Gurdine's requests for a Nation of Islam service, and that they denied these services. We find this sufficient to allege personal involvement.

We agree with defendants, however, that the complaint fails to allege the personal involvement of defendant Mason. There are no allegations in the complaint as to how Mason was involved in the alleged violation of Gurdine's civil rights. Rather, Gurdine's claims against Mason appear to be based entirely on her supervisory role as superintendent of the prison, which is not a sufficient basis to allege personal involvement. See Rode, 845 F.2d at 1207. We will accordingly dismiss the claims against Mason without prejudice.

Turning to the merits of Gurdine's religious freedom claim, the First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I. It offers protection for a wide variety of expressive activities, which are lessened, but not extinguished, in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. Turner v. Safley, 482 U.S. 78, 89 (1987). Although prisoners must be afforded "reasonable opportunities" to exercise the religious freedoms guaranteed by the First Amendment, see Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972) (*per curiam*), imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment right to the free exercise of religion. O'Lone v. Shabazz, 482 U.S. 342, 348-49 (1987). Only beliefs which are both sincerely held and religious in nature are entitled to constitutional protection. Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); Dehart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000).

Once it is established that the individual has a belief that is "both sincerely held and religious in nature," the Turner test must be applied to determine whether the curtailment at issue is reasonably related to penological interests. DeHart, 227 F.3d at 51. Specifically, Turner instructs courts to weigh the following four factors in determining the reasonableness of a challenged prison regulation: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are "ready alternatives" available "that fully accommodate the prisoner's right at *de minimis* cost to valid penological interests." Turner, 482 U.S. at 89-91; O'Lone, 482 U.S. at 350-52.

The most important prong of the Turner analysis requires a rational connection between the policy and the legitimate governmental interest that justifies it. Nasir v. Morgan, 350 F.3d 366, 372 (3d Cir. 2003). "According to Turner, a regulation will be sustained unless, 'the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.'" Id. (citing Turner, 482 U.S. at 89-90).

Gurdine alleges that defendants have continuously failed to provide Nation of Islam religious services and that there is no rational basis between the denial of the services and any legitimate governmental interest. (See Doc. 1-1 at 2-3). We find these allegations sufficient to allege a violation of the First Amendment.

Determining whether the alleged denial of religious services is rationally related to a legitimate governmental interest will require consideration of facts that are not properly considered at this stage of litigation. Hence, we will deny the motion to dismiss Gurdine's First Amendment claim.

We will likewise deny the motion to dismiss with respect to Gurdine's RLUIPA claim. RLUIPA provides additional protection for the religious rights of incarcerated individuals beyond that provided by the First Amendment. See Holt v. Hobbs, 574 U.S. 352, 361 (2015). Under RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "A plaintiff bears the initial burden of proving that a prison policy 'implicates his religious exercise.'" Ramirez v. Collier, 595 U.S. 411, 425 (2022) (quoting Holt, 574 U.S. at 360). If the plaintiff makes such a showing, "the burden flips and the government must 'demonstrate that imposition of the burden on that person' is the least restrictive means of furthering a compelling governmental interest." Id. (quoting 42 U.S.C. § 2000cc-1(a). Gurdine's allegations that defendants have refused to provide separate religious services for the Nation of Islam is sufficient to allege a violation of RLUIPA. As with Gurdine's First

Amendment claim, resolution of the claim requires consideration of a factual record that cannot be considered in resolving a motion to dismiss.[1]

Finally, the court will deny the motion to dismiss Gurdine's equal protection claim. The Equal Protection Clause of the Fourteenth Amendment states that no state shall "deny to any person within its jurisdiction the equal protection of the law." U.S. CONST. amend. XIV. This language is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To state a claim for violation of equal protection, a plaintiff must allege "that the Government has treated [him] differently from a similarly situated party and that the Government's explanation for the differing treatment does not satisfy the relevant level of scrutiny." Stradford v. Sec'y Pa. Dep't of Corrs., 53 F.4th 67, 73 (3d Cir. 2022). Gurdine alleges that religious services were resumed for all religious groups in SCI-Mahanoy beginning in October 2021, but that the prison did not resume religious services for the Nation of Islam at that time, despite the prison having previously approved the Nation of Islam for separate services in January 2020. (Doc. 1 at 2-3). We find these allegations sufficient to allege a violation of the equal protection clause.

---

[1] Defendants additionally argue in a footnote that Gurdine's state law claims should be dismissed on the same basis as the First Amendment and RLUIPA claims because the Pennsylvania Constitution and RFPA "provide no broader protections than those extended under the U.S. Constitution and RLUIPA." (Doc. 6 at 7 n.3 (citing Mobley v. Coleman, 65 A.3d 1048 (Pa. Commw. Ct. 2013). We will allow the state law claims to proceed for the same reasons we have allowed the First Amendment and RLUIPA claims to proceed.

In sum, the court will deny defendants' motion to dismiss except to the extent that it seeks dismissal of Gurdine's claims against defendant Mason. Before dismissing a civil rights claim for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. Phillips, 515 F.3d at 245. We will grant leave to amend because Gurdine's claims against Mason are factually, rather than legally, deficient.

## IV. Conclusion

We will grant defendants' motion to dismiss in part and deny it in part, dismiss the claims against defendant Mason without prejudice, and grant plaintiff leave to file an amended complaint. We will additionally impose case management deadlines that will govern this case. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    November 17, 2023